IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

SEQUOIA SALES, INC.,

       Plaintiff,

   v.

P.Y. PRODUCE, LLC and CHOPPER'S
PRODUCE, LLC,

       Defendants.

No. CV 10-5757 CW (NJV)

**REPORT AND RECOMMENDATION TO
GRANT PLAINTIFF'S MOTIONS FOR
DEFAULT JUDGMENT**

(Docket Nos. 67 & 69)

On May 17, 2011, Plaintiff Sequoia Sales, Inc., moved for default judgment[1] against

Defendant P.Y. Produce, LLC ("P.Y."). Doc. No. 67. On June 2, 2011, Plaintiff moved for default

judgment against Defendant Chopper's Produce, LLC ("Chopper's"). Doc. No. 69. On June 7, 2011,

both motions were referred to the undersigned for a Report and Recommendation. Doc. No. 70. The

Court heard argument on the motions on July 12, 2011. Having carefully considered the arguments

of the parties and the papers submitted, the Court recommends that Plaintiff's motions for default

judgment be **GRANTED**.

## I.  BACKGROUND

On December 17, 2010, Plaintiff filed this action against P.Y. and Jose Gomez seeking

enforcement of the statutory trust established under 7 U.S.C. § 499e(c) of the Perishable Agricultural

Commodities Act ("PACA"). Doc. No. 1. P.Y. guaranteed all obligations including obligations

relating to Plaintiff's produce sales by signing a personal guaranty. Am. Compl. at ¶ 21 (Doc. No.

31). Plaintiff alleges that it sold and delivered to P.Y. wholesale amounts of produce worth

---

[1] It is unclear whether Plaintiff intended to file a motion for default judgment by the Court or a motion for default judgment by the Clerk. The caption of Plaintiff's motion is titled "Motion for Default Judgment by the Court," however, Plaintiff cites to Federal Rule Civil Procedure 55(b)(1), which addresses default judgment by the Clerk. Due to Plaintiff's request for attorneys' fees, this Court interprets Plaintiff's motions as motions for default judgment by the Court.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1   $141,661.79 between April 23, 2010 and November 22, 2010, which remains unpaid. Am. Compl. at

2   ¶ 5. At the time of receipt of the produce, Plaintiff became a beneficiary in a statutory trust designed

3   to assure payment to produce suppliers. § 499e(c)(2). The trust consists of all produce-related assets,

4   including all funds commingled with funds from other sources and all assets procured by such funds,

5   in the possession or control of P.Y. since the creation of the trust. *Id.*

6          According to the complaint, P.Y. did not dispute the debt and P.Y. also advised Plaintiff that

7   it was unable to pay Plaintiff at the time. Am. Compl. at ¶ 8. On November 22, 2010, P.Y. tendered

8   partial payment to Plaintiff in the amount of $1,962.00 for the produce supplied. *Id.* However, the

9   bank returned the check due to insufficient funds. *Id.*

10         Plaintiff filed this action on December 17, 2010 and simultaneously moved for a temporary

11  restraining order/ preliminary injunction. P.Y. was served with the summons, complaint, and

12  application for a temporary restraining order ("TRO") on December 20, 2010. Doc. No. 18. P.Y. did

13  not appear at the December 23, 2010 hearing on Plaintiff's motion for a TRO/ preliminary

14  injunction. Doc. No. 20. On December 29, 2010, Judge Claudia Wilken granted Plaintiff's motion

15  for a preliminary injunction. Doc. No. 21. On December 30, 2010, Plaintiff served Judge Wilken's

16  preliminary injunction order on P.Y. Doc. No. 26.

17         Plaintiff filed a motion for an order to show cause why an order of civil contempt should not

18  be issued against Defendants on January 7, 2011, which the court denied on January 18, 2011. Doc.

19  Nos. 22, 24. Plaintiff subsequently renewed its motion on January 19, 2011. Doc. No. 28.

20         On January 21, 2011, an amended complaint was filed to add Chopper's as a defendant and

21  was served on P.Y. and Chopper's on January 25, 2011. Doc. Nos. 31, 40, 41, 45. The amended

22  complaint alleges that P.Y. transferred PACA trust assets belonging to Plaintiff to Chopper's. Am.

23  Compl. at ¶ 25. Further, Plaintiff alleges that Defendants intended that Chopper's assume the

24  benefits and burdens of P.Y.'s business. *Id.* at ¶ 35. Thus, as a successor to P.Y., Chopper's should

25  be liable for the PACA trust obligations of P.Y. *Id.* at ¶ 36.

26         On January 24, 2011, the court issued an order to show cause why an order for civil

27  contempt should not be issued against Defendants P.Y. and Jose Gomez, ordering Defendants to

28  appear on February 3, 2011. Doc. No. 34. Counsel for P.Y. appeared on February 3, 2011 and the

**United States District Court**
For the Northern District of California

1  court ordered P.Y. to appear on February 10, 2011. Doc. No. 47. Counsel for P.Y. appeared on

2  February 10, 2011 and the parties agreed to the deposition of P.Y. and that P.Y. would provide bank

3  statements after April to Plaintiff. Doc. No. 48. The court also ordered the parties to appear on

4  March 10, 2011, but P.Y. failed to appear. Doc. Nos. 48, 50. After receiving an extension, P.Y.

5  again failed to appear at the rescheduled motion hearing on March 17, 2011. Doc. No. 66.

6       On April 5, 2011, the court granted Plaintiff's motion to amend the preliminary injunction to

7  add Chopper's and issued the preliminary injunction against Chopper's on April 13, 2011. Doc. Nos.

8  54, 62.

9       On April 8, 2011, Plaintiff moved for entry of default as to P.Y. and Chopper's, which the

10  Clerk entered on April 13, 2011. Doc. Nos. 58, 59, 63.

11      On April 20, 2011, Chopper's filed its answer to the complaint, but did not move to set aside

12  the Clerk's entry of default. Doc. Nos. 65, 68. The court ordered Chopper's to move to set aside the

13  Clerk's entry of default by May 26, 2011. Doc. No. 68.

14      On May 17, 2011, Plaintiff moved for default judgment as to P.Y. Doc. No. 67. Because

15  Chopper's failed to move to set aside the entry of default as ordered, Plaintiff moved for default

16  judgment as to Chopper's on June 2, 2011. Doc. No. 69. On June 7, 2011, both motions were

17  referred to this Court. Doc. No. 70. The Court heard argument on the motions on July 12, 2011, at

18  which counsel for Plaintiff, Chopper's, and Defendant Gomez appeared. P.Y. did not appear at the

19  July 12th hearing.

20                                **II.  LEGAL STANDARD**

21      Federal Rules of Civil Procedure 55(b), which addresses default judgments, provides in part

22  as follows:

23      (2) By the Court. In all other cases, the party must apply to the court for a default judgment.
        A default judgment may be entered against a minor or incompetent person only if
24      represented by a general guardian, conservator, or other like fiduciary who has appeared. If
        the party against whom default judgment is sought has appeared personally or by a
25      representative, that party or its representative must be served with written notice of the
        application at least 7 days before the hearing. The court may conduct hearings or make
26      referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate
        judgment, it needs to:
27
28      (A) conduct an accounting;
        (B) determine the amount of damages
        (C) establish the truth of any allegation or evidence; or

                                        3

1  (D) investigate any other matter.

2  The decision to grant or deny a default judgment is within the court's discretion. *Alan*

3  *Neuman Productions, Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988). "As a preliminary

4  matter, the court must [first] assess the adequacy of the service of process on the party against whom

5  default is requested." *Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, 2000 U.S.

6  Dist. LEXIS 19065, *2 (N.D. Cal. 2000). Once the court determines that service was sufficient, it

7  may consider the following factors when exercising its discretion to enter a default judgment:

8  (1) the possibility of prejudice to the plaintiff; (2) the merits of [the] plaintiff's
   substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake
9  in the action; (5) the possibility of a dispute concerning material facts; (6) whether
   the default was due to excusable neglect; and (7) the strong policy underlying the
10  Federal Rules of Civil Procedure favoring decisions on the merits.

11  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Upon default, all factual allegations in the

12  complaint are taken as true, except those relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826

13  F.2d 915, 917-18 (9th Cir. 1987) (quoting *Geddes v. United Financial Group*, 559 F.2d 557, 560

14  (9th Cir. 1977)).

15  **III.  DISCUSSION**

16  **A.     Service of Process**

17  The Federal Rules of Civil Procedure permit service on a domestic corporation,

18  unincorporated association, or public entity by mailing a copy of the summons and complaint to an

19  authorized agent. Fed. R. Civ. P. 4(h).

20  1.      P.Y. Produce

21  On December 20, 2010, copies of the summons, complaint, and TRO were served on P.Y. by

22  mailing copies to Sara Alvarez at 131 Terminal Court, Stall 62, South San Francisco, CA 94080.

23  Doc. No. 18. On December 30, 2010, Jose Gomez was personally served with the Order Granting

24  Preliminary Injunction. Doc. No. 26. The Motion for Default Judgment was served on P.Y. by

25  mailing copies to P.Y. at 868 Olive Street, South San Francisco, CA 94080. Doc. No. 67-7.

26  2.      Chopper's Produce

27  On January 25, 2011, Jose Gomez, as an authorized agent for Chopper's, was personally

28  served with copies of the summons, amended complaint, order to show cause, and various filings

United States District Court
For the Northern District of California

4

1   regarding the preliminary injunction/ TRO. Doc. Nos. 40, 45. On March 10, 2011, Chopper's filed a

2   stipulation and proposed order for a continuance stating that though Plaintiff's motion for injunctive

3   relief was improperly served on Jose Gomez, Chopper's accepted service of Plaintiff's motion. Doc.

4   No. 49. On April 13, 2011, a copy of the preliminary injunction against Chopper's was served by

5   overnight delivery to 125 Terminal Court, stall 62, South San Francisco, CA 94080. There is no

6   dispute that Chopper's was served with the amended complaint because it filed an answer to the

7   amended complaint on April 20, 2011. Doc. No. 65. Chopper's is represented by counsel who has

8   appeared in this action, most recently at the July 12, 2011 hearing on the pending motions, and is a

9   registered Electronic Case File ("ECF") user. It is also undisputed that Chopper's has been served

10  with Plaintiff's present motion for default judgment and other filings in this action.

11          Therefore, both P.Y. and Chopper's were properly served under the Federal Rules.

12  **B.     *Eitel* Factors**

13          1.      Possibility of Prejudice to the Plaintiff

14          Plaintiff delivered and P.Y. duly accepted the commodities, for which P.Y. agreed to make

15  payments. P.Y. failed to pay for the commodities despite repeated demands. Further, Plaintiff will

16  likely have no other alternative by which to recover damages suffered as a result of P.Y.'s actions.

17  *See Henry Avocado Corp. v. Polo's Produce Inc.*, 2010 WL 4569136, *2 (E.D. Cal. 2010) (finding

18  that plaintiff would be prejudiced because no alternative remedy existed in its PACA action).

19  Therefore, Plaintiff would be prejudiced absent entry of default judgment.

20          2.      Merits and Sufficiency of Complaint

21          Plaintiff's allegations in the complaint must be sufficient to "state a claim on which

22  [P]laintiff may recover." *Pepsico, Inc. v. California Security Cans*, 238 F. Supp. 2d 1172, 1175

23  (C.D. Cal. 2002). To establish a sufficient PACA claim, Plaintiff must establish:

24          (1) the commodities sold were perishable agricultural commodities, (2) the purchaser was a
            commission merchant, dealer, or broker, (3) the transaction occurred in contemplation of
25          interstate or foreign commerce, (4) the seller has not received full payment on the
            transaction, and (5) the seller preserved its trust rights by including statutory language
26          referencing the trust on its invoices.

27  *Beachside Produce, LLC v. Flemming Enters., LLC*, 2007 WL 1655554, *2 (N.D. Cal. 2007).

28

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1    Plaintiff is able to establish a sufficient PACA claim against P.Y. Plaintiff sold and delivered

2 to P.Y., in interstate commerce, wholesale quantities of perishable agricultural commodities between

3 April 23, 2010 and November 22, 2010. Am. Compl. at ¶ 5. The amount sold and delivered was

4 worth $141,661.79, which remains unpaid. *Id.* P.Y. is engaged in the business of buying wholesale

5 quantities of produce and was a dealer subject to and licensed under PACA as a dealer. *Id.* at ¶ 4.

6 Lastly, Plaintiff preserved its interest in the PACA trust by providing notice to P.Y. through its

7 invoices pursuant to § 499e(c)(4). *Id.* at ¶ 7.

8    3.    Amount of Money at Stake

9    Next, the Court "must consider the amount of money at stake in relation to the seriousness of

10 Defendant's conduct." *Pepsico*, 238 F. Supp. 2d at 1176. Plaintiff seeks the unpaid principal amount

11 along with attorneys' fees, costs, and prejudgment interest. P.Y. failed to make payments to Plaintiff

12 for the benefits it received and violated its obligations under PACA. Therefore, the amount of

13 money at stake is proportional to P.Y.'s conduct.

14    4.    Possibility of Dispute Concerning Material Facts

15    Upon default, all factual allegations in the complaint are taken as true, except those relating

16 to damages. *TeleVideo Sys.*, 826 F.2d at 917-18. After review of the amended complaint, the

17 possibility of a dispute concerning material facts appears small. This factor also weighs in favor of

18 default judgment. Chopper's successor liability is discussed separately in Section C below.

19    5.    Whether Default Was Due to Excusable Neglect

20    As noted above, both P.Y. and Chopper's were properly notified of the lawsuit. In addition,

21 Defendants were served with Plaintiff's motion for default judgment detailing all amounts owed and

22 Plaintiff's other filings including its earlier requests for entry of default. Doc. Nos. 45, 67-7. The

23 Court finds that the possibility that the default resulted from the excusable neglect of Defendants is

24 remote. This factor, therefore, weighs in favor of default judgment.

25    6.    Policy for Deciding on the Merits

26    Public policy generally favors a decision on its merits whenever possible. *Eitel*, 782 F.2d at

27 1472. However, P.Y.'s failure to make a proper appearance and defend against Plaintiff's claims,

28 and Chopper's failure to appear for hearings and move to set aside the entry of default as ordered by

1   Judge Wilken, make a decision on the merits impossible in this case. As a result, the policy favoring

2   decisions on the merits does not prevent the Court from entering a default judgment in this case.

3   *Pepsico*, 238 F. Supp. 2d at 1177.

4          The foregoing factors weigh in favor of default judgment. Therefore, Plaintiff's request for

5   the entry of default judgment against P.Y. should be granted.

6   **C.      Chopper's Liability as P.Y.'s Successor**

7          After recommending that default judgment be granted against P.Y., the Court now examines

8   whether Chopper's is liable as P.Y.'s successor.

9          Generally, a corporation that purchases the assets of another corporation does not take the

10  liabilities of that purchased corporation. *Washington v. United States*, 930 F. Supp. 474, 477 (W.D.

11  Wash. 1996). However, successor liability was created to prevent corporations from evading its

12  liabilities through changes of ownership. *Id.* at 477. Successor liability exists when a plaintiff

13  establishes that (1) the purchasing corporation expressly or impliedly agrees to assume the liabilities

14  of the seller, (2) the transaction amounts to a "de facto" consolidation or merger, (3) the purchasing

15  corporation is merely a continuation of the selling corporation, or (4) the transaction was

16  fraudulently entered into in order to escape liability. *Id*. According to the amended complaint,

17  Plaintiff alleges that Chopper's is merely a continuation of P.Y. Am. Compl. at ¶¶ 31-35.

18         A substantial continuity test is used to determine whether a purchasing corporation is merely

19  a continuation. *Washington*, 930 F. Supp. at 478. The substantial continuity test takes into

20  consideration the following factors: (1) retention of the same employees, (2) retention of the same

21  supervisory personnel, (3) retention of the same production facilities in the same physical location,

22  (4) production of the same product, (5) retention of the same name, (6) continuity of assets,

23  (7) continuity of general business operations, and (8) whether the successor holds itself out as the

24  continuation of the previous enterprise. *Id*.

25         Plaintiff alleges that P.Y. is still operating out of its business location as Chopper's, P.Y.

26  transferred PACA trust assets to Chopper's, and that Chopper's presently holds PACA trust assets

27  belonging to Plaintiff. *See* Am. Compl. at ¶¶ 25-29, 31-33; Pl.'s Mot. to Amend the Prelim.

28  Injunction (Doc. No. 33 at 2). In response to the Court's instructions at the July 12, 2011 hearing,

**United States District Court**
For the Northern District of California

7

United States District Court

For the Northern District of California

1  Plaintiff filed a supplemental declaration with excerpts from Defendant Gomez's deposition.

2  Supplemental Declaration of Louis W. Diess In Support of Motion for Default Judgment (July 15,

3  2011) ("Diess Second Supp. Decl.") (Doc. No. 78). At his February 25, 2011 deposition, Defendant

4  Gomez testified that P.Y. ceased all business operations on December 13, 2010. *Id.* at ¶ 8. Beginning

5  on December 16, 2010, Chopper's began operating out of the same business location under the same

6  sign and lease as P.Y. *Id.* Defendant Gomez further testified that Chopper's uses and has in its

7  possession equipment that P.Y. owned, such as computers, pallet jacks, and a forklift. *Id.* On January

8  6, 2011 and January 12, 2011, a representative of Plaintiff purchased produce from Chopper's, the

9  business entity located at the former business location of P.Y. Chopper's appears to employ all of

10  the former employees of P.Y., including Defendant Gomez (P.Y.'s principal) and Sara Alvarez

11  (P.Y.'s bookkeeper). *Id*. at ¶ 9.

12     Additionally, Plaintiff alleges that Chopper's has paid charges formerly paid by P.Y., such as

13  utilities and insurance. *See* Am. Compl. at ¶ 33. Plaintiff also clarified at the July 12, 2011 hearing

14  that Ms. Alvarez, the alleged owner of Chopper's, is the daughter of Defendant Gomez and has

15  cashed checks for P.Y. Diess Second Supp. Decl. at ¶¶ 8, 14. For example, Efren's Produce

16  ("Efren's ") informed Plaintiff that Efren's owed a debt to P.Y. and has been making weekly

17  payments to Mr. Gomez and Ms. Alvarez. *Id.* Efren's provided Plaintiff with invoices, a purchase

18  order, and a check dated February 18, 2011 made out to P.Y., which was endorsed by Ms. Alvarez.

19  *Id.*

20     In another situation, A&B Produce ("A&B ") owed P.Y. $4,426. *Id.* at ¶ 12. Ms. Alvarez

21  contacted A&B to inform A&B that it had offset debts owed to P.Y. and that Chopper's will collect

22  the balance of $1,787.50 owed between A&B and P.Y. *Id.* at ¶ 13. A&B provided a document that

23  contains Ms. Alvarez's notes stating, "P.Y. Produce owed [A&B] $2638.50 " and "[d]educt from the

24  above balance and the total that [A&B] would pay is $1,787.50." *Id.*

25     Thus, Plaintiff claims that Chopper's is a continuation of P.Y. and is liable for the PACA

26  trust obligations of P.Y. Am. Compl. at ¶ 36.

27     Chopper's denies Plaintiff's allegations that Chopper's is the successor of P.Y. Answer (Doc.

28  No. 65). Chopper's claims that Ms. Alvarez is the sole owner of Chopper's and does not have any

1  interest in P.Y. Chopper's also claims that Defendant Gomez has no interest in Chopper's. *Id.* At the

2  July 12, 2011 hearing, counsel for Chopper's and Defendant Gomez, Mr. Patrick Daley Calhoun,

3  stated that he was not representing P.Y. and that P.Y. no longer existed. The Court notes, however,

4  that Mr. Calhoun previously appeared for P.Y. before Judge Wilken. Minute Entry: Show Cause

5  Hearing (February 3 and 10, 2011) (Doc. Nos. 47, 48).

6        Therefore, under the substantial continuity test, Chopper's is a continuation of P.Y. and as

7  such, is liable as P.Y.'s successor. Chopper's operates out of the same location as P.Y., employs the

8  same employees as P.Y., received PACA trust assets from P.Y., paid charges formerly paid by P.Y.,

9  and has cashed checks for P.Y. Also, at the July 12, 2011 hearing, besides stating that P.Y. no longer

10  exists, Chopper's did not otherwise dispute the arguments in Plaintiff's motion for default judgment

11  and has not filed any opposition or response to the motion. This Court recommends that the Court

12  also enter default judgment against Chopper's.

13  **D.    Relief Sought**

14        Plaintiff seeks to recover the principal amount that remains unpaid ($141,661.79), interest,

15  attorneys' fees, and costs. Plaintiff seeks interest in the amount of $24,102.92, attorneys' fees in the

16  amount of $29,511.50, and costs in the amount of $4,106.40. Supplemental Declaration of Louis W.

17  Diess In Support of Motion for Default Judgment, ¶ 18 (July 5, 2011) ("Diess First Supp. Decl.")

18  (Doc. No. 74-1); Supplemental Declaration of Jeremy A. Burns In Support of Motion of Default

19  Judgment, ¶¶ 9-11, Ex. 1 (July 5, 2011) (Doc. No. 74-2).

20       1.    Principal Amount

21        A dealer who violates PACA provisions is liable to the persons injured for the full amount of

22  damages. § 499e. Affidavits and documentation are sufficient to support the damages claimed by

23  plaintiffs in a PACA action. *C.H. Robinson Co. v. Marina Produce Co., Inc.*, 2007 WL 39311, \*4

24  (N.D. Cal. 2007) (finding that 15 invoices showing the outstanding amount, which reflected the

25  exact amount claimed, was sufficient).

26        Here, Plaintiff claims that Defendants owe Plaintiff a principal amount of $141,661.79 as

27  reflected in the Amended Complaint. Doc. No. 31. Plaintiff supports its claims with detailed

28  affidavits, which include a Statement of Outstanding Invoices and Payments and monthly invoices.

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1    Declaration of Jim G. Paplos In Support of Motion for Default Judgment, ¶ 8, Ex. 1, 2 (May 17,

2    2011) (Doc. No. 67-5). The Statement of Outstanding Invoices and Payments includes the total

3    amount due per invoice sent and the remaining unpaid balance from April 23, 2010 through

4    December 10, 2010. The monthly invoices provide the items, prices, and quantities that were

5    ordered and delivered. Based on Plaintiff's documents, the principal amount of $141,661.79 is

6    capable of being ascertained from definite figures. Therefore, this Court recommends that Plaintiff

7    be awarded the principal amount.

8              2.       Attorneys' Fees and Interest

9              Plaintiff seeks attorneys' fees in the amount of $29,511.50, costs in the amount of $4,106.40,

10   and interest in the amount of $24,102.92. Plaintiff argues that attorneys' fees, costs, and interest

11   should be awarded as "sums owing in connection with" the trust transactions. The trust provisions of

12   PACA provide that the PACA trust assets shall be held by receiver of the produce in trust for the

13   benefit of the unpaid beneficiary until full payment of the "sums owing in connection with such

14   transactions have been received." § 499e(c)(2).

15             Although an express statutory basis for attorneys' fees does not exist under PACA, the Ninth

16   Circuit has found attorneys' fees proper when an enforceable contract exists giving the plaintiff a

17   right to attorneys' fees. *Middle Mountain Land and Produce Inc. v. Sound Commodities Inc.*, 307

18   F.3d 1220, 1225 (9th Cir. 2002). In *Middle Mountain Land and Produce Inc.*, the plaintiff supplier

19   filed a claim for the amount of unpaid invoices, outstanding attorneys' fees, and interest after the

20   defendant went into bankruptcy. *Id.* at 1222. The appellate court held the plain meaning of the

21   phrase "in connection with" in PACA encompassed not only the price of the perishable agricultural

22   commodities but also additional related expenses, including contractual rights to attorneys' fees and

23   interest. *Id.* The case was remanded to the district court to determine whether an enforceable

24   contract existed. *Id.* at 1225.

25             Following the Ninth Circuit's holding in *Middle Mountain Land and Produce*, the Second

26   Circuit in *Coosemans Specialties, Inc. v. Gargiulo* agreed with other circuits "that where the parties'

27   contracts include a right to attorneys' fees, they can be awarded 'sums owing in connection with'

28   perishable commodities transactions under PACA." 485 F.3d 701, 709 (2d Cir. 2007) (citing *Middle*

*Mountain Land and Produce Inc.*, 307 F.3d at 1221). In that case, the defendant argued that the attorneys' fees based on the language contained in the invoices were unenforceable because the parties never discussed or agreed to them. *Id.* at 708. The Second Circuit held that the language contained in the plaintiffs' invoices created an enforceable contract making the defendant purchaser personally liable for attorneys' fees and interest as "sums owing in connection with" perishable commodities transactions under PACA. *Id.* at 709.

In this case, Plaintiff argues that there is an enforceable agreement regarding attorneys' fees and interest between Plaintiff and P.Y. based on the parties' agreement and the invoices it sent to Defendant, which included language setting out provisions of PACA and provided terms for past due accounts. Similar to *Coosemans*, Plaintiff also included the attorneys' fees language in its invoices. The terms in Plaintiff's invoices state, "[i]nterest at 1.5% per month added to unpaid balance. Interest and attorneys' fees necessary to collect any balance due hereunder shall be considered sums owing in connection with this transaction under the PACA trust." Because language contained in invoices regarding attorneys' fees and interest creates an enforceable contract, under *Middle Mountain Land and Produce Inc.* and *Coosemans*, Defendants are liable for attorneys' fees and interest.

### a. Attorneys' Fees

The guaranty between the parties states, "if suit is instituted to enforce this guarantee, the undersigned promises and agrees to pay . . . attorney fees in such amount as may be fixed by the court." Compl., Ex. 1. According to the guaranty, the parties agree that attorneys' fees will be determined by the court.

To determine a reasonable attorneys' fee award, the court employs the lodestar method. *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Id*. There is a strong presumption that the lodestar figure constitutes reasonable fees, and only in exceptional cases will adjustment of the lodestar be appropriate. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564-65 (1986). In assessing a reasonable hourly rate, the court should consider the prevailing market rate in the

11

**United States District Court**
For the Northern District of California

1  community for similar services by lawyers of reasonably comparable skill, experience, and

2  reputation. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). In similar PACA cases, courts have held that

3  $250.00 to $350.00 per hour was reasonable for attorneys' fees. *C.H. Robinson Co.*, 2007 WL 39311

4  at *4 (finding that $250.00 per hour was reasonable for attorneys' fees in a PACA claim);

5  *Paramount Citrus Coop., Inc. v. H&M Produce, Inc.*, 2008 WL 4716764, *5 (E.D. Cal. 2008)

6  (finding that the plaintiff in a PACA claim was entitled to reasonable attorneys' fees at $350.00 per

7  hour).

8      Plaintiff's lead counsel, Mr. Louis Diess, is a partner of McCarron & Diess, which

9  concentrates its practice on PACA matters. Diess First Supp. Decl. at ¶¶ 2, 4. Since Mr. Diess's

10  admission to the bar in 1992, he has concentrated his practice solely on PACA matters. *Id.* at ¶ 4.

11  His standard billing rate is $350.00 per hour. *Id.* at ¶ 6. Mr. Diess's associate, Ms. Maria C. Simon,

12  also worked on the case. *Id.* at ¶ 7. Ms. Simon has concentrated her practice solely on PACA matters

13  since her admission to the bar in 2007. *Id.* Her standard billing rate is $285.00 per hour. *Id.* Mr.

14  Diess stated in his declaration that he is familiar with rates charged by other attorneys of similar

15  practice areas and tenure, and believes that counsel's standard rates are fair and reasonable. *Id.* at ¶¶

16  6, 7.

17      Local counsel, Mr. Jeremy Burns, is an attorney at J A Burns Law, which was substituted for

18  the law firm of Carr, McClellan, Ingersoll, Thompson & Horn as of June 1, 2011. Burns Supp. Decl.

19  at ¶¶ 1, 3. Mr. Burns has six years of experience focusing entirely in civil litigation and charges an

20  hourly rate of $310.00. *Id.* at ¶ 6. Mr. Burns declares that his normal hourly rate is commensurate

21  with his experience. *Id.* Burns's colleague, Mr. Michael McQuaid, focuses his practice on

22  bankruptcy and creditors rights. *Id.* at ¶ 7. Mr. McQuaid, an A-V rated attorney with 21 years of

23  experience, charges an hourly rate of $480.00. *Id.* The paralegal's, Ms. Claudia Hyslop, services

24  were billed at $200.00 per hour. *Id.* at ¶ 8. Mr. Diess's and Ms. Simon's standard billing rate of

25  $350.00 and $285.00, respectively, appear reasonable. *See C.H. Robinson Co.*, 2007 WL 39311 at

26  *4; *Paramount Citrus Coop.*, 2008 WL 4716764 at *5. Similarly, Mr. Burns's and Ms. Hyslop's

27  standard rates are also reasonable. However, Mr. McQuaid's hourly rate of $480.00 per hour is

28

1   significantly higher than the $250.00 to $350.00 range for PACA cases. This Court recommends that

2   Mr. McQuaid's hourly rate be reduced to the reasonable rate of $350.00 per hour.

3          The next lodestar factor is the reasonable number of hours counsel spent on the case. If the

4   requested number of hours is greater than the number of hours reasonably competent counsel would

5   have billed, then the court should reduce the requested number of hours accordingly. *Hensley v.*

6   *Eckerhart*, 461 U.S. 424, 434 (1983).

7          In the present case, Mr. Diess spent 23.15 hours and Ms. Simon spent 5.4 hours prosecuting

8   the case, including work to obtain the TRO and Preliminary injunction against P.Y., motion practice

9   to find Defendants in civil contempt, and amending the complaint to add Chopper's. Diess First

10   Supp. Decl. at ¶ 9. As for local counsel, Mr. Burns billed 60 hours, Mr. McQuaid billed 1 hour, and

11   Ms. Hyslop billed 3 hours. Burns Supp. Decl. at ¶ 9. Local counsel's work included serving

12   Defendants, drafting various filings, deposition preparation and time, and attending hearings before

13   Judge Wilken. Burns Supp. Decl., Ex. 1. Mr. Diess states that a significant amount of its fees were

14   incurred as a result of Defendants' failure to abide by the Court's TRO and Preliminary Injunction,

15   which necessitated four hearings regarding Defendants' compliance. Diess First Supp. Decl. at ¶ 10.

16   Further, Mr. Diess points out that a high quality of attorney work was required because the case

17   involved complex issues involving multiple defendants. *Id.*

18          The Court finds that Plaintiff's counsel spent a reasonable number of hours on the case given

19   the complexities and motion practice. The Court notes that counsel successfully brought motions for

20   injunctive relief. The Court recommends, however, reducing Mr. McQuaid's rate from $480.00 to

21   $350.00 for the 1 hour billed. Therefore, the Court recommends awarding $29,381.50 in attorneys'

22   fees, a reduction of $130.00 from the total requested of $29,511.50.

23                        **b.        Interest**

24          As stated above, if contracted for, prejudgment interest may be included in a PACA trust

25   claim. Based on the provisions in the invoices provided, interest is accrued at 1.5% monthly (18%

26   annually) for each month the amount is left unpaid. The prejudgment interest can be determined by

27   taking the unpaid amount, multiplying it by the monthly interest rate, and accruing it for the number

28

United States District Court
For the Northern District of California

1    of months it is left unpaid. Plaintiff seeks $24,102.92 in interest. Diess First Supp. Decl. at ¶ 17, Ex.

2    2.

3           However, there is a discrepancy in Plaintiff's calculation of interest. For example, the

4    interest calculation spreadsheet attached to the Declaration of Jim G. Paplos states that interest due

5    on Invoice No. 24043 for the unpaid amount of $5,280.00, based on 365 elapsed days, is $953.01,

6    which is calculated using an interest rate of 18.0494%. Paplos Decl., Ex. 3 (Doc. No. 67-5). Interest

7    calculated at 18% annually for this amount should be $950.40. On June 28, 2011, the Court ordered

8    Plaintiff to supplement its briefing to clarify and correct its calculation of interest. Doc. No. 73. On

9    July 5, 2011, Plaintiff filed a supplemental declaration, but the interest calculation discrepancy

10   remained. Diess First Supp. Decl. at ¶ 17, Ex. 2. It appears that Plaintiff incorrectly calculated

11   interest based on 364 days per year, instead of 365 days. During the July 12, 2011 hearing, Plaintiff

12   stipulated to a re-calculation of the interest sought to correct the discrepancy. Under the correct

13   calculation, prejudgment interest is due in the amount of $24,036.89.

14          Because prejudgement interest is owed in connection with the underlying transactions, the

15   Court recommends that Plaintiff be awarded $24,036.89, a reduction of $66.03 from the total

16   requested of $24,102.92.

17          3.     Costs

18          Lastly, Plaintiff seeks $4,106.40 in costs based on the provision of the guaranty between

19   Plaintiff and P.Y. that stated, "if suit is instituted to enforce this guarantee, the undersigned promises

20   and agrees to pay the cost of such action." Compl., Ex. 1. The Court ordered Plaintiff to supplement

21   its briefing to clarify whether it was seeking costs and to identify the total amount of costs requested.

22   Doc. No. 73. Plaintiff seeks costs for filing fees, process server fees, deposition costs, and delivery

23   charges totaling $4,106.40 ($825.51 for the law firm of McCarron & Diess and $3,280.89 for the

24   law firm of Carr, McClellan, Ingersoll, Thompson & Horn). Diess First Supp. Decl. at ¶ 12, Ex. 1;

25   Burns Supp. Decl. at ¶ 10. Plaintiff requests $3,280.89 in costs for Carr, McClellan, "which include

26   the following: $28.94 for delivery charges, $630.00 for the Deposition of Jose Gomez, $79.56 for

27   Federal Express, $52.50 in filing fees with the court and $1,013.86 for process server fees." Burns

28   Supp. Decl. at ¶ 10. The enumerated items, however, total $1,804.36, not $3,280.89 as stated. In

United States District Court
For the Northern District of California

14

1   addition, the itemized bill attached to the Supplemental Burns Declaration includes a category of

2   "miscellaneous" charges totaling $1,503.34, which the Court recommends not be awarded. *See*

3   Burns Supp. Decl., Ex. 1 (Doc. 74-2 at 10). The Court recommends awarding costs totaling

4   $2,630.37 ($825.51 to the law firm of McCarron & Diess and $1,804.36 to the law firm of Carr,

5   McClellan).

## IV.  RECOMMENDATION

In light of the foregoing, IT IS HEREBY RECOMMENDED as follows:

1.      that Plaintiff's request for the entry of default judgment against Defendants be

        GRANTED;

2.      that Plaintiff's request for damages in the amount of $141,661.79 be GRANTED;

3.      that Plaintiff be AWARDED $29,381.50 in attorneys' fees;

4.      that Plaintiff be AWARDED $2,630.37 for costs; and

5.      that Plaintiff be AWARDED $24,036.89 in prejudgment interest.

## V.  CONCLUSION

Any party may file objections to this report and recommendations with the district judge

within fourteen days after being served with a copy. 28 U.S.C. § 636(b)(1)(B),(C); Fed. R. Civ.

Proc. 72(b); Civil L.R. 72-3. Failure to file objections within the specified time may waive the right

to appeal the District Court's order.

Plaintiff is instructed to serve this report and recommendation on Defendants P.Y. and

Gomez.

Dated:  July 25, 2011

NANDOR J. VADAS
United States Magistrate Judge

**United States District Court**
For the Northern District of California

15